**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DAVID HARRISON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 21-161** |
| **ALEJANDRO MAYORKAS, SECRETARY, THE UNITED STATED DEPARTMENT OF HOMELAND SECURITY** | **SECTION: "KWR"** |

**ORDER AND REASONS**

Before the Court is a **Motion to Dismiss (R. Doc. 7)** filed by the Defendant, Alexander Mayorkas, Secretary of the Department of Homeland Security, seeking an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), dismissing Plaintiff David Harrison's complaint. Plaintiff Harrison is proceeding *pro* se. No opposition to this motion was filed. The motion was set for submission on September 1, 2021 and was heard on the brief. On November 1, 2021, following the consent of the parties, this matter was referred to the undersigned United States Magistrate Judge in accordance with Title 28 U.S.C. § 636(c). R. Doc. 12.

## I. Background

On January 19, 2021, Plaintiff David Harrison ("Harrison"), an African-American male, filed a complaint alleging various claims of discriminatory conduct stemming from his employment with the Department of Homeland Security, Transposition Security Administration Agency at the Louis Armstrong New Orleans International Airport ("TSA-MSY"). R. Doc. 1. He alleges unlawful race and sex based employment discrimination, retaliation, harassment, and a hostile work environment in violation of Title VII of the Civil Rights Act ("Title VII"), retaliation under the Family Medical Leave Act ("FMLA"), and discrimination in violation of 42 U.S.C. §1983. *Id.* Harrison is a pro se Plaintiff.

On June 11, 2019, Harrison contends that he was terminated for misuse of a government credit card and inserting a USB into a TSA-MSY computers. R. Doc. 1 p. 3. His termination was based on five allegations: (1) Consuming Alcohol on Duty, (2) Misuse of Government Issued Travel Card, (3) Failure to Follow Policy, (4) Failure to Timely Honor Debt, and (5) Lack of Candor. *Id.* Harrison alleges that his termination was the result of a discriminatory and retaliatory campaign of harassment spearheaded by Brad Meyers, Senior Transportation Security Manager ("STSM Meyers") and carried out by Reginald Chesterfield, Transportation Security Manager ("TSM Chesterfield"). *Id.* at p. 5. He additionally contends that his termination is just one example of both Meyers and Chesterfield imposing penalties on African American male employees at a higher rate than other groups. *Id.*

The incidents that Harrison alleges in support of his claims begin in May 2018. He submits that his wife suffers from a chronic illness and he is her primary caregiver, as a result, he was approved for FMLA leave in 2015. *Id.* at p. 7. Harrison contends that on May 17, 2018 he was absent from work due to his wife's illness. *Id.* He also contends that he informed his employer of his absence, but TSM Chesterfield, an African American male in leadership position with TSA-MSY, recorded Harrison as AWOL. *Id.* According to Harrison, after this incident TSM Chesterfield circulated a memo instructing managers to be suspicious of employees claiming to use FMLA leave. *Id.* at p. 6.

On May 24, 2018, Harrison contends that he received a Letter of Counseling from TSM Chesterfield for failure to submit an OPM-71 by the end of his first workday after taking the FMLA leave. *Id.* This, according to Harrison, was another act of harassment and discrimination because common practice at TSA-MSY is to collect these forms before the end of every bi-weekly pay period. *Id.*

In response to the above-mentioned events, Harrison filed an EEOC complaint alleging harassment and discrimination in June 2018. *Id.* at p. 9. However, he declined to move forward with the proceedings and attempted to resolve the situation outside of the formal complaint process in order to create a more positive work relationship. *Id.*

After filing, but dismissing the EEOC complaint, Harrison was on official travel from August 27, 2018 to September 1, 2018. *Id.* at p. 3. During this travel, it is alleged that he misused the government credit card. *Id.* Harris contends that on September 15, 2018 he responded to management officials via emails explaining the charges to the credit card. *Id.* After submitting his explanation, he contends that he was notified, on September 19, 2018 that his response was received, reviewed, and that it had been deemed that the charges in question were a misuse in accordance with "TSA Travel Card Policy MD 100.5 Section 6.B.1. IBA Travel Card Use." *Id.* On September 21, 2018 Harrison was given a notice that the Pre-Decision process, where TSA management investigates an allegation before making a discipline decision, in accordance with TSA policy, would begin. *Id.*

Subsequently on October 25, 2018, Harrison contends that Chesterfield, asked his direct supervisor, Senior Transportation Security Officer Dustin Ryks ("STSO Ryks") to reduce his mid-year performance appraisal from a score of five (5) Achieved Excellence to a three (3) Achieved Expectation in the Honesty/Integrity category. *Id.* at p. 4. He further alleges that these actions were noted, and concerns were expressed over the actions by Ryks. *Id.* at p. 5

Harrison next contends that Chesterfield's harassing behavior continued on November 8, 2018 when he was summoned by Chesterfield to explain his absence from an Intel Briefing. *Id.* at p. 11 He alleged that he was absent from the meeting because Chesterfield gave one location for the meeting, and then changed the location without informing him. *Id.*

On February 28, 2019, Harrison contends that he again utilized FMLA leave to care for his wife. *Id.* at p. 7 He contends that he followed proper procedure when taking the day off and notified his employer that he was taking the entire day under FMLA. *Id.* On the same day, according to Harrison he was placed on overtime leave restriction. As a result of being placed on overtime restriction, Harrison's overtime shifts scheduled for March 2, 2019 and March 7, 2019 were cancelled. *Id.*

Harrison alleges that being placed on overtime restriction was retaliation for his alleged misuse of a government credit card. One example given by Harrison was the fact that, shortly before he was placed on restriction, Designated Grievance Official Greggory Fruge at the National Resolution Center contacted STSM Meyer, Randell Lundsgar, and Arden Hudson seeking clarification into the alleged falsifying of documents and mishandling of Harrison's 2018 Mid-Year Evaluation. *Id.* at p. 8 Harrison contends that the management uses the tactic of lowering evaluation scores to discredit black, male employees and create justification for terminating them. *Id.* at p. 10

In March 2019, nearly six (6) months after the alleged misuse of the government credit card, Harrison alleges that he received a Notice of Proposed Removal. *Id.* at p. 5. Harrison contends that TSA directives require a thirty (30) day fact finding period and that this process usually takes about ninety (90) days. R. Doc. 1 p. 5. Harrison also alleges that on March 6, 2019 after receiving his notice of proposed removal, he was removed from all screening functions and was to only perform non-security functions.

After being removed from security functions Harrison alleges that Chesterfield, on two occasions, publicly asked Harrison if he had worked with the Advance Threat and Local Allocation Strategy Team ("ATLAS"). Harrison contends that Chesterfield asked these questions in a condensing tone and laughed or smirked when Harrison told him he was not, per directives given

to him because of the notice of proposed removal. Harrison next alleges that Chesterfield prohibited him from utilizing the Multi-Purpose Room and Training Room, which are areas open to all employees, and restricted him to working in a cubical in the corner of the manager's office. While working in this cubicle, Harrison alleges that Chesterfield would walk by looking at him in an intimidating manner. These actions, according to Harrison where harassing, intimidating, and acts of retaliation that created a hostile work environment.

## II. Standard of Review

A plaintiff who brings a claim *pro se* is entitled to a liberal reading of that complaint. *Payton*, 550 F. App'x at 195 (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Payton*, 550 F. App'x 194, 195 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Nevertheless, the liberal *pro se* pleading standard still demands compliance with procedural standards." *Payton*, 550 F. App'x at 195 (citing *Douglass v. United Services Auto. Ass'n*, 65 F.3d 452, 455 n. 4 (5th Cir.1995)).

Under Rule 12(b)(6), the Court may dismiss a complaint if it lacks jurisdiction over the subject matter or for failure to state a claim upon which any relief may be granted. *See* Fed.R.Civ.P. 12(b)(1), (6). The same standard is applied for a motion to dismiss brought under either Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim for which relief can be granted. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the

plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See id*.

Finally, Rule 12(b)(1) requires dismissal of an action if the Court lacks jurisdiction over the subject matter of the Plaintiff's claim. Fed. R. Civ. Pro. 12(b)(1). The Fifth Circuit has held "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 327 (5th Cir. 2013).

## III. **Analysis**

### a. **FMLA Claim**

Harrison first asserts a claim of wrongful discharge and retaliation under the FMLA. R. Doc. 1. Harrison contends that he had been approved for FMLA on his wife's behalf since 2015 and that on two instances where he utilized FMLA leave he faced discrimination or harassment from supervisors. *Id.*

Defendant contends that while FMLA affords employees with various rights and protections, different remedies apply to federal employees as compared to employees of private business. R. Doc. 7-1, p. 5. Specifically, Defendant contends that as a federal employee of longer than 12 months, Harrison is covered by Title II of FMLA which, unlike Title I, does not include a right to judicial review of FMLA related claims. *Id.*

Federal employees with more than twelve months of service are covered under Title II of FMLA. 5 U.S.C. 6381(a)(1). Title II of FMLA also contains an interference provision which makes it unlawful for an employer to interfere with, restrain, or deny the exercise of the attempt to exercise any rights given to an employee. 5 U.S.C. 6385(a). However, unlike Title I, Title II does not contain a private right to action for violations of FMLA. *Carlson v. White*, 133 F. App'x 144, 144-45 (5th Cir. 2005) (citing 5 U.S.C. §§ 6381-6387). Harrison was an employee with the TSA-MSY from at least 2015 until his termination on June 11, 2019, this was at least four years of employment which is well over twelve months. Harrison therefore was covered under Title II of FMLA. R. Doc. 7-1, p. 6. As such Harrison is not able to assert a claim under FMLA, and this claim is dismissed.

### b. **§1983 Claim**

Harrison also alleges discrimination in violation of 42 U.S.C. §1983. R. Doc. 1, p. 2. Defendant argues that the §1983 claim should be dismissed because Harrison does not allege any

violation of state law. R. Doc 7 p. 7. Defendant also argues that any §1983 claims should be dismissed because they are preempted by Title VII.

To state a claim under §1983 the plaintiff must establish that there has been: (1) a deprivation of a right secured by the Constitution, and (2) that the deprivation was caused by a person acting under the color of state law. 42 U.S.C. §1983; *Bass v. Parkwood Hosp.*, 180 F 3d 234, 241 (5th Cir. 1999). The Fifth Circuit Court has repeatedly held that federal officials acting under color of federal law are not subject to suit under §1983. *Broadway v. Block*, 694 F. 2d 979, 981 (5th Cir. 1982); *See also Mack v. Alexander*, 575 F.2d 488 (5th Cir. 1978) (upholding the district court's dismissal of the action where plaintiff filed suit against certain officials of the Internal Revenue Service).

Additionally, it is well settled that Title VII is the exclusive and preemptive remedy for claims of racial discrimination in federal employment. *See Brown v. General Services Administration*, 425 U.S. 820, 835 (1976). *See also Rowe v. Sullivan,* 967 F. 2d 186, 189 (5th Cir. 1992) *quoting Hampton v. Internal Revenue Service*, 913 F. 2d 18, 183 (5th Cir. 199); *Watkins v. Lujan,* 922 F. 2d 261, 263 (5th Cir. 1991). However, a plaintiff can avoid their claim being preempted if they plead facts that are sufficiently distinct from the employment context. *See Irwin v. Veteran Admin.*, 847 F. 2d 1092, 1095-96 (5th Cir. 1989).

In the present case, Harrison has alleged discrimination by his supervisors, who are all federal employees. All of the actions complained of also occurred while those federal employees were allegedly acting under color of federal laws, not state laws. Additionally, while Harrison does not go into detail about events that support his §1983 claims, a reading of the complaint shows that all the alleged acts occurred within the context of employment. Therefore, the Court finds that Harrison has failed to state a §1983 claim and dismissal is appropriate.

**c. Title VII Claims**

Harrison next raises several claims under Title VII. He alleges that he faced discrimination due to his race and sex. R. Doc. 1. He contends that he was treated differently, and more harshly than white employees. *Id.* He also alleges that he was subject to retaliation, retaliatory harassment, and a hostile work environment. *Id.*

**i. Race and Sex Based Discrimination**

First, the Court will address the claim of race and sex-based discrimination. Harrison alleges that his termination was the result of a campaign of discrimination and harassment by STSM Meyers and TSM Chesterfield. Harrison concedes that he was terminated for misuse of a government credit card and inserting a USB into a TSA-MSY computer. R. Doc. 1. While acknowledging the reason for his termination was failure to comply with TSA-MSY policies and procedures, Harrison also contends that other employees, not in his protected group, were not punished for their failure to comply with the same policies and other unrelated policies. He additionally contends that when employees not in his protected group were reprimanded, the consequences were less severe in comparison to what African American male employees faced.

Harrison also contends that management at TSA-MSY did not follow established procedures and policies when investigating his alleged misuse of the government credit card. *Id.* He contends that the guidelines require a thirty-day fact finding period and an investigation by the TSA Office of Inspector. *Id.* at p. 5. Harrison asserts that these actions did not occur and that the disregard for guidelines is common when supervisors interact with Black male employees. *Id.*

Harrison further contends that after the credit card allegations, TSM Chesterfield, who was not his direct supervisor, directed his first line supervisor, STSO Ryks, to change the rating on his 2018 Mid-Year Performance Appraisal. According to Harrision, STSO Ryks rated him at five (5) Achieved Excellence under the category of Integrity/Honesty, but after interference from TSM

Chesterfield, the rating was reduced to three (3) Achieved Expectations. *Id.* at p. 4. Harrison contends that the changing of appraisal was a tactic used by management against other African American employees to "create a negative paper trail" to justify termination. *Id.* at p. 10. Harrison also identifies an unnamed white female accused of misuse of a government credit card who did not receive any form of discipline. *Id.* at p. 15.

On May 24, 2018, Harrison was scheduled to begin his shift at 3:30 am, but called to inform TSA-MSY that he would be absent and using FMLA leave. He contends that instead of coding the absence as FMLA leave, TSM Chesterfield coded him as AWOL. Harrison also contends that TSM Chesterfield gave him a Letter of Counseling for failing to turn in an OPM-71[1] form. TSA-MSY policy dictates that these forms should be completed and turned in on the next working day after the employee takes leave. However, Harrison contends that common practice at TSA-MSY is to collect the forms on a bi-weekly basis. *Id.* at p. 6.

Harrison further contends that African American, male, employees face negative consequences for not following procedure, even though the common practice in the workplace is different. *Id*. Harrison additionally contends that when employees who are not African-America call out of work after their shift began, they face no consequences, while African American employees are penalized for the same actions. *Id.*

On February 29, 2019, Harrison once again used FMLA leave to care for his wife. Harrison contends that he followed proper procedure and called to inform TSY-MSY of his absence before the start of his shift. *Id.* at p. 7. That same day, Harrison alleges that TSM Chesterfield left a voicemail informing him that he was placed on overtime leave restriction and the upcoming overtime he had scheduled was being cancelled. *Id.* Harrison further contends that STSM Meyers' placed twenty-five (25) Black employees on overtime restriction, while only placing one (1) White

[1] Request for Leave or Approved Absence Form

employee on overtime restriction. *Id.* at p. 9. Harrison believes this is another example of race-based discrimination as Meyers was allowing white employees an opportunity to make more money through overtime and penalizing Black employees at a higher rate. *Id.*

Defendant contends that Harrison's complaint does not allege facts sufficient to establish a prima facie case of race-based discrimination. R. Doc. 7-1, p. 8. They contend that Harrison does not plead that he performed to his employer's legitimate expectations nor does he provide sufficient facts to establish a comparator. *Id.* at p. 9.

First, the Court acknowledges Harrison's pro se status which must be taken into consideration when determining if Plaintiff's claims can withstand the motion to dismiss. A plaintiff who brings a claim *pro se* is entitled to a liberal reading of that complaint. *Payton v. United States of America*, 550 F. App'x at 195 (5th Cir. 2013) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Additionally, a "*pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Payton*, 550 F. App'x 194, 195 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Next, the Court also notes that the Supreme Court in *Swierkiewicz v. Sorema* held that a plaintiff need not make a prima facie showing of discrimination under the *McDonnell Douglas* framework in order to survive a motion to dismiss. *See* 534 U.S. 506 (2002). The Supreme Court found that the prima facie framework is an evidentiary standard and not a pleading requirement. *Id.* at 510-11. Therefore, the Court need not address whether the Plaintiff established a prima facie case, instead the Court will assess the claims under "the ordinary rules for assessing the sufficiency of a complaint." *Id.* at 511.

Here, a reading of the complaint in the light most favorable to Harrison, and accepting his well pleaded facts as true, shows that Plaintiff's complaint is sufficient. In this case, it is undisputed that Harrison is a member of a protected class as an African American male. Additionally, Harrison

contends that his termination was not the result of an investigation and the following of TSA procedures, rather it was the result of targeted negative treatment because of his race and sex. Moreover, while Harrison does not allege facts to show that he performed to his employers legitimate expectations, he does allege that when White employees engage in the same rule-breaking behavior they were treated more favorably than himself and other African-American employees.

Specifically, Harrison submits that a white, female, employee committed the same acts as him, misuse of a government credit card, but suffered no consequences. *Id.* Defendant argues that this is not sufficient to establish a comparator. However, the Court reiterates that Harrison is not required to establish *every* element of the prima facie case at this stage of the case. *Moore v. Metropolitan Human Service Dist.,* No. 09–6470, 2010 WL 1462224, at *3, 2010 U.S. Dist. LEXIS 34808, at *18–20 (E.D. La. April 8, 2010). In addition to the one white, female employee who Harrison alleges committed the same rule violation, he also lists eight other incidents where white TSA-MSY employees violated workplace rules with no repercussions. R. Doc. 1, p. 14-15. He also contends that DFSD Randell Lundsgard has suspended, reprimanded, and/or terminated African American employees for lesser violations when compared to white employees. *Id.* at p. 15. Therefore, the Court denies Defendants motion to dismiss this claim.

**ii. <u>Hostile Work Environment</u>**

Harrison next alleges that he was subjected to hostile work environment because of unwelcomed race-based harassment by his supervisors and false accusations lobbied against him. Harrison contends that supervisors created a hostile environment by targeting African American male employees with harsh punishments when compared to white employees.

Harrison first raises allegations related to his use of FMLA leave. He contends that in May 2018, he was marked as AWOL by TSM Chesterfield when taking FMLA leave. He further

contends that in connection with this absence he was cited with a Letter of Counseling for failing to turn in his OPM- 71 on his first day of work after taking FMLA leave. This Letter of Counseling, according to Harrison, was an attempt at harassment and discrimination by TSM Chesterfield because these forms are usually collected at the end of each pay period.

In October 2018, Plaintiff alleges that TSM Chesterfield sent an email to all TSA-MSY supervisors encouraging management to "not take employees FMLA absences at face value" and that "he was working on something special for those employees on FMLA." R. Doc 1 p. 7. Harrison further contends that on February 28, 2019, when he again utilized FMLA leave, TSM Chesterfield called him and left a voicemail stating that he was being placed on overtime restrictions.

In addition to his complaints regarding FMLA leave, Harrison contends that in November 2018, TSM Chesterfield called an Intel briefing and later changed the location without telling Harrison. After the meeting, Harrison contends that TSM Chesterfield questioned him and other employees about his location during the briefing.

Harrison also alleges that on two separate occasions in March 2019, after being removed from security duties due the notice of proposed removal, TSM Chesterfield publicly asked him if he was working for the ATLAS team and laughed when Harrison responded that he was not. During the same period, Harrison also alleges that TSM Chesterfield banned him from using areas open to all employees and forced him to work in cubical in the manager's office. Additionally, while Harrison worked in that area, TSM Chesterfield would "dauntingly" walk past the cubical looking in Harrison direction in a manner that he viewed as intimidating. R. Doc 1 p. 12.

Defendant contends that Harrison's complaint does not contain any allegations of discrimination, intimidation, or ridicule that was severe and/or pervasive. Defendant further

contends that Harrison does not allege any facts that the harassment creating the hostile work environment was based upon his race or sex.

In order to establish his hostile work environment claim, the Plaintiff must prove that his environment was permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment. *Jackson v. Honeywell Inter., Inc.*, 601 F. App'x 280, 287 (5th Cir. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, (1993)). However, as previously mentioned, the prima facie case is an evidentiary standard used in assessing motions for summary judgment, not a pleading requirement. *Swierkiewicz,* 122 S.Ct. 992. Thus, the Court will evaluate whether the Plaintiff has sufficiently plead the alleged acts of harassment were based upon his race or color and were severe or pervasive. *See Douglas v. St. John the Baptist Parish Library Board of Control,* *3 2021 WL2592920 (E.D. La. June 24, 2021).

Accepting Plaintiff's well-plead facts as true and drawing all reasonable inferences in his favor, shows that Harrison has not alleged facts sufficient to establish that he was repeatedly subjected to severe or pervasive discriminatory conduct linked to his race or sex. Harrison generally alleges that African-American males faced consequences when white employees did not and that the consequences faced by African-American employees were more harsh than those faced by white employees. However, in *Whitlock v. Lazer Spot Inc.*, the Fifth Circuit upheld the dismissal of a hostile work environment claim where the plaintiff alleged in his complaint that he was punished for infractions that white employees were not punished for. 657 Fed. Appx 284, 287 (5th Cir. 2016).

Harrison also complains of incidents between himself and his supervisors. He contends that he was called while on FMLA leave, he was marked AWOL, and that he was placed on overtime restriction for his use of FMLA leave. Harrison alleges that Chesterfield questioned his

work activities after he received the letter of proposed removal. He also contends that Chesterfield relegated him to working in a cubical in the corner of the managers' offices and would walk past the cubicle looking in Harrisons direction. However, this Court has previously held that heightened scrutiny of work performance and compliance with the work rules generally are not the type of harassment that can support a hostile environment claim. *Douglas v. St. John the Baptist Parish Library Board of Control,* No-21-599*,* 2021 WL 2592920, at *2 (E.D. La. June 24, 2021) Additionally, even taken in totality with other incidents, these allegations would not be sufficiently severe or pervasive and represented isolated events of disagreement between Harrison and his supervisor. *See Elwakin v. Target Media Partners Operating Co. LLC,* 901 F.Supp.2d 730, 753-54 (2012); *Hernandez v. Yellow Transportation, Inc.,* 670 F.3d 644 (5th Cir.2012). Therefore, at this stage of the case, the complaint is not sufficient to set forth a claim, and dismissal is appropriate.

Plaintiff also raises a claim of retaliatory harassment creating a hostile work environment. In order to establish a prima facie case for this claim, the Plaintiff must show: (1) he engaged in a protected activity; (2) he was the victim of harassment; (3) there was a causal connection between the harassment and the protected activity; (4) the harassment affected a term, condition, or privileges of his employment and; (5) the employer knew or should have known of the harassment and failed to take prompt remedial actions. *Valdry v. Brennan*, 15-cv-453(JJB), 2017 WL 2702226 at *6 (M.D. La., June 21, 2017). The fourth prong on the prima facie case requires a showing that the harassment was so severe or pervasive that it altered the conditions of his employment and created an abusive working environment*. Id.* As previously explained, the acts that Plaintiff alleges constituted the harassment and hostile work environment, are not sufficiently severe or pervasive to support the claim. As such, Plaintiff's retaliatory harassment claim is dismissed.

**iii. Retaliation**

Harrison also asserts a claim of retaliation under Title VII. He alleges that he received a Letter of Counseling, was placed on overtime restriction, incidents where Harrison he faced false accusations, intimidation, insults, and ridicule, and eventually termination. R. Doc. 1, p. 19.

Defendant requests that the Court dismiss this claim for failure to state a claim. Defendant contends that the complaint does not allege any adverse employment action as linked to a protected activity by Harrison. Simply put, the Defendant contends that Harrison did not plead any facts that show a causal connection between the Plaintiff participation in a protected activity and the purported retaliation.

To establish a prima facie case for unlawful retaliation, plaintiff must show (i) that he engaged in activity protected by Title VII, (ii) that an adverse employment action occurred and (iii) that a causal link existed between the protected activity and the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996) (quoting *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983)).

An employee has engaged in a protected activity when they: (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a); *See Long v. Eastfield College,* 88 F. 3d 300. With retaliation claims, the plaintiff must establish a causal connection between the protected activity and the retaliation. A plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia*, 938 F.3d at 243. However, "[t]he protected act and the adverse employment action must be very close in time to establish causation by timing alone." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (quotation marks, citation, and alterations omitted).

Given the definition of a protected activity, a reading of Harrison's complaint shows that he filed an EEO complaint and also made complaints and/or filed grievances with his supervisors and the Designated Grievance Official. The EEO complaint was filed by Harrison in June 2018. The complaint was in response to the Letter of Counseling he received after failing to turn in the OPM-71 form and TSM Chesterfield coding his FMLA absences as AWOL. Harrison voluntarily declined to move forward with the proceedings. R. Doc. 1, p. 9. However, about three (3) months later Plaintiff alleges that his FY 2018 Performance Appraisal score was changed from a five (5) to a three (3) in the category of Integrity/Honesty. *Id.*

Harrison also contends that he raised concerns about the validity and timeline of the investigation into his alleged misuse of the government credit card. He further alleges that on February 23, 2019, Designated Grievance Official Greggory Fruge, reached out to supervisors via email seeking clarification on the "falsifying of documents and the mishandling of the Plaintiff's FY 2018 Performance Appraisal grievance." R. Doc. 1, p. 8. On February 28, 2019, while he was on FMLA leave, Plaintiff received a call from TSM Chesterfield placing him on overtime restriction and canceling scheduled overtime shifts on March 2nd and March 7th.

The Fifth Circuit has previously held that a period of two-and-a-half months, *Garcia*, 938 F.3d at 243 and a period of two months, *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 995 (5th Cir. 2005), are close enough to show a causal connection. Here, there is a period of only 5 days between DGO Fruge contacting Harrison's supervisors about his allegations and the adverse action of being placed on overtime restriction and having scheduled shifts cancelled. Therefore, the Court denies Defendants motion to dismiss this claim.

Accordingly,

## IV. Conclusion

**IT IS ORDERED** that the Defendant's **Motion to Dismiss (R. Doc. 7)** is **GRANTED in part and DENIED in part**

**IT IS FURTHER ORDERED** that the Motion to Dismiss is **GRANTED** and Plaintiff's FMLA and §1983 claims are dismissed for lack of jurisdiction under Rule 12(b)(1).

**IT IS FURTHER ORDERED** that the Motion to Dismiss is **GRANTED** and Plaintiff's hostile work environment and retaliatory harassment claims are dismissed for failure to state a claim under rule 12(b)(6)

**IT IS FURTHER ORDERED** that the Motion to Dismiss is **DENIED** and Plaintiff's race and sex discrimination and retaliation claims shall proceed forward for the reasons assigned.

New Orleans, Louisiana, this 13th day of December 2021.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**